1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

| | |
|---|---|
| LISA L.,<br><br>               Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>              Defendant. | NO. 2:21-CV-0198-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

13

14

15

16

17

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 14, 15). This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

18

**JURISDICTION**

19

20

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited: The Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds*.  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.*  An "error is harmless where it is 'inconsequential to the

ultimate nondisability determination.'"  *Id.* at 1115 (citation omitted).  The party

appealing the ALJ's decision generally bears the burden of establishing that it was

harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be unable "to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that [he or she] is not only unable to do [his

or her] previous work[,] but cannot, considering [his or her] age, education, and

work experience, engage in any other kind of substantial gainful work which exists

in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 §§

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity" ("RFC").  RFC, defined generally as the claimant's ability to perform physical and mental work activities on a sustained

basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

In 2014 and 2015, Plaintiff filed applications for Title II period of disability and disability insurance benefits and Title XVI supplemental security income.  Tr. 195, 202.  The applications were denied initially and on reconsideration.  Tr. 15. Plaintiff appeared at a hearing before an administrative law judge ("ALJ") in 2017. Tr. 45-88.  On May 2, 2018, the ALJ denied Plaintiff's claims.  Tr. 12-30.  In 2019, following an appeal to this Court, the Court granted the parties' stipulation to a remand.  Tr. 1181-82.  After remand, on July 23, 2020 and January 11, 2021, hearings were held before another ALJ.  Tr. 1072, 1109.  On April 21, 2021, the ALJ denied Plaintiff's claim.  Tr. 1037-1057.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 30, 2014, the alleged onset date.  Tr. 1042.  At step two, the ALJ found Plaintiff had the following severe impairments: coronary artery disease, history of Wolfe-Parkinson-White syndrome (requiring ablation and pacemaker), diabetes with peripheral neuropathy, anxiety disorder versus post-traumatic stress disorder (PTSD), and organic mental disorder

versus cognitive disorder, not otherwise specified.  Tr. 1043.  At step three, the

ALJ found Plaintiff did not have an impairment or combination of impairments

that meets or medically equals the severity of a listed impairment.  Tr. 1043.  The

ALJ then found Plaintiff had the RFC to perform light work with the following

nonexertional limitations:

> [Plaintiff] can lift/carry 20 pounds occasionally and 10 pounds
> frequently; can sit for 6 hours and stand and/or walk for 2 hours
> during an 8-hour workday, can never climb ladders, ropes or
> scaffolds; can occasionally climb ramps and stairs, can occasionally
> stoop, crouch, kneel, and crawl; can occasionally reach above
> shoulder level bilaterally; can handle and finger frequently bilaterally;
> cannot work around moving or dangerous machinery or be exposed to
> unprotected heights; is limited to simple, routine, repetitive, low-stress
> work; can occasionally handle simple workplace changes; can have
> brief, superficial interaction with co-workers and the public; and can
> have occasional interaction with supervisors (although additional time
> for training is acceptable).

Tr. 1045-46.

At step four, the ALJ found Plaintiff was unable to perform any past relevant

work.  Tr. 1055.  At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, and testimony from the vocational expert, there

were other jobs that existed in significant numbers in the national economy that

Plaintiff could perform such as office helper, mailroom clerk, and marking clerk.

Tr. 1056.  The ALJ concluded Plaintiff was not under a disability, as defined in the

Social Security Act, from May 30, 2014 through April 21, 2021, the date of the ALJ's decision.  Tr. 1057.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability insurance benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly assessed the Grid Rules;

2.  Whether the ALJ properly assessed Plaintiff's RFC;

3.  Whether the ALJ properly assessed Plaintiff's migraines;

4.  Whether the ALJ properly evaluated Plaintiff's symptom testimony; and

5.  Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 14 at 2.

## DISCUSSION

### A.  Plaintiff's Migraines

Plaintiff challenges the ALJ's failure to account for Plaintiff's migraines. ECF No. 14 at 6.

At step two of the sequential evaluation process, the ALJ considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the claimant suffers from "any impairment or combination of

impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  An impairment must be established with objective medical evidence such as clinical and laboratory diagnostic techniques, subjective symptoms, a diagnosis, and a medical opinion are insufficient.  20 C.F.R. §§ 404.1521, 416.921.  An impairment is considered "not severe if it does not significantly limit your physical or mental ability to do basic work activities" which include "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  20 C.F.R. §§ 404.1522, 416.922.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).  A claimant's RFC should be the same whether or not certain impairments are considered severe. *Id.* at 1049.  Thus, where the ALJ decides step two in the claimant's favor, there is

1    no prejudice in failing to designate a specific impairment as severe where the ALJ

2    considers the impact of such impairment in formulating the RFC.  *Id.*

3        Step two was found in Plaintiff's favor where the ALJ found multiple severe

4    impairments.  Tr. 1043.  Because the ALJ decided step two in Plaintiff's favor, the

5    ALJ was required to consider evidence of all impairments in assessing Plaintiff's

6    RFC.  *Buck*, 869 F.3d at 1049.  The ALJ's discussion at step four includes

7    consideration of Plaintiff's migraines in connection with Plaintiff's chronic neck

8    pain.  Tr. 1046-47 (noting Plaintiff's migraine complaints), 1049 (finding

9    medication to be generally effective and the record insufficient to establish

10    migraines would prevent Plaintiff working one week per month).  Therefore,

11    Plaintiff is not prejudiced and any error is harmless.

12    **B.  Plaintiff's Symptom Testimony**

13        Plaintiff contends the ALJ failed to rely on clear and convincing reasons to

14    discredit her symptom testimony.  ECF No. 14 at 11-17.

15        An ALJ engages in a two-step analysis to determine whether to discount a

16    claimant's testimony regarding subjective symptoms.  Social Security Ruling

17    ("SSR") 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether

18    there is 'objective medical evidence of an underlying impairment which could

19    reasonably be expected to produce the pain or other symptoms alleged.'"  *Molina*,

20    674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

1   "The claimant is not required to show that her impairment 'could reasonably be

2   expected to cause the severity of the symptom she has alleged; she need only show

3   that it could reasonably have caused some degree of the symptom.'"  *Vasquez*, 572

4   F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir.

5   2007)).

6          Second, "[i]f the claimant meets the first test and there is no evidence of

7   malingering, the ALJ can only reject the claimant's testimony about the severity of

8   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

9   rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

10  omitted).  General findings are insufficient; rather, the ALJ must identify what

11  symptom claims are being discounted and what evidence undermines these claims.

12  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.

13  Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

14  explain why he or she discounted claimant's symptom claims).  "The clear and

15  convincing standard is the most demanding required in Social Security cases."

16  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r

17  of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

18         Factors to be considered in evaluating the intensity, persistence, and limiting

19  effects of a claimant's symptoms include: (1) daily activities; (2) the location,

20  duration, frequency, and intensity of pain or other symptoms; (3) factors that

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; (5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; (6) any measures other than

treatment an individual uses or has used to relieve pain or other symptoms; and (7)

any other factors concerning an individual's functional limitations and restrictions

due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7-8; 20 C.F.R.

§§ 416.929(c)(3), 416.929(c)(3).  The ALJ is instructed to "consider all of the

evidence in an individual's record," "to determine how symptoms limit ability to

perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's impairments could reasonably be expected to

cause the alleged symptoms; however, Plaintiff's statements concerning the

intensity, persistence, and limiting effects of those symptoms were not entirely

consistent with the evidence.  Tr. 1047.

### 1. Drug Seeking Behavior

Exaggeration of symptoms to receive more medication is a clear and

convincing reason to discount a claimant's testimony.  *Edlund v. Massanari*, 253

F.3d 1152, 1157 (9th Cir. 2001).  After Plaintiff's neck surgery in November 2014,

the ALJ noted that Plaintiff continued to present for pain medication where the

surgery relieved neck pain but not other symptoms.  Tr. 1048 (citing Tr. 501, 518,

530, 388-411).  The ALJ found Plaintiff did not seek further care other than refills of pain medication until 2015.  *Id.*  Following neck pain symptoms in late 2015, Plaintiff was referred to physical and massage therapy.  *Id.* (citing Tr. 674). Plaintiff went to massage therapy but did not pursue physical therapy.  *Id.*  The ALJ noted that other than pain medication refills, there is no other evidence of treatment until the end of 2016.  *Id.*  At the end of 2016, doctors referred Plaintiff to treatment for myofascial pain but the ALJ noted there was no evidence Plaintiff pursued the treatment.  *Id.* (citing Tr. 662).  Following this history, the ALJ found Plaintiff continued to present to Dr. Toliver for pain medications until 2017, when she requested a referral for the treatment for opiate addiction.  Tr. 1048 (citing Tr. 779-911).  The ALJ found Plaintiff had a pattern of seeking medication that called into question whether she was actually experiencing pain or was addicted to narcotic pain medication and alleging pain to receive more.  *Id.*

In finding a pattern of drug seeking behavior, the ALJ primarily relies on Plaintiff's continued pattern to seek pain medications for her pain and that she did not follow up with other courses of treatment.  The Court will not disturb the ALJ's rational interpretation of the record where the finding is adequately supported.  *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).  Even if this finding were error, the ALJ provided other reasons to discount Plaintiff's symptoms that are supported by substantial evidence.  *See Carmickle v.*

1    *Commissioner*, 533 F.3d 1155, 1163 (9th Cir. 2008); *Vertigan v. Halter*, 260 F.3d

2    1044, 1050 (9th Cir. 2001) (upholding the ALJ where "the ALJ here considered

3    other factors and found additional reasons for discrediting Plaintiff's subjective

4    symptom testimony.").

5        2.    *Course of Treatment*

6        The ALJ found Plaintiff's alleged symptoms inconsistent with her course of

7    mental health treatment and that Plaintiff's migraines improved with treatment.  Tr.

8    1049-50.  The claimant's course of treatment is a relevant factor in determining the

9    severity of alleged symptoms.  20 C.F.R. §§ 416.929(c)(3), 416.929(c)(3).  The

10   unexplained or inadequately explained failure to seek treatment or follow a

11   prescribed course of treatment may serve as a basis to discount a claimant's alleged

12   symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Relatedly,

13   improvement with treatment is another relevant factor.  *Warre v. Comm'r of Soc.*

14   *Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions

15   effectively controlled with medication are not disabling for purposes of

16   determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040

17   (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a

18   claimant's complaints of debilitating pain or other severe limitations).

19   //

20   //

1       a.    <u>Mental Health Treatment</u>

2          The ALJ found that Plaintiff's course of mental health treatment inconsistent

3   with her disability allegations.  Tr. 1050.  First, while Plaintiff testified to

4   significant mental health symptoms, the ALJ found mental clinical findings normal

5   and that medication was effective.  Tr. 1050-51 (citing Tr. 377, 414, 493, 518, 547,

6   628-652, 667, 673, 775-76, 791, 864, 890, 921, 979-1036).  Second, while Plaintiff

7   alleged multiple panic attacks a week, she has only attended three therapy sessions

8   during the entire period at issue.  *Id.*  Third, the ALJ noted Plaintiff presented as

9   "ebullient, bubbly, and histrionic", exhibited no signs of significant depressive

10  symptoms, and that while there was some cognitive decline and memory problems,

11  Dr. Toews did not conclude that Plaintiff was incapable of the tasks in the RFC.

12  Tr. 1051 (citing Tr. 569-580).  The ALJ's finding is supported by substantial

13  evidence.

14      b.    <u>Migraine Medication</u>

15         The ALJ found that Plaintiff's improvement with medication was

16  inconsistent with her disabling migraine allegations.  Tr. 1049.  The ALJ found

17  Topiramate to be generally effective in controlling Plaintiff's migraines and did not

18  find sufficient evidence that monthly headaches prevented Plaintiff from working

19  one week per month.  *Id.* (citing Tr. 656-763).  It is the ALJ's responsibility to

20  resolve conflicts in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995).  Plaintiff's differing citations do not overturn the ALJ's rational interpretation of the remaining evidence in the record.  *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  This finding is supported by substantial evidence.

### 3.  *Objective Medical Evidence*

The ALJ found Plaintiff's symptom complaints regarding her cervical spine and cardiac conditions inconsistent with the objective medical evidence in the record.  Tr. 1047-48.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Rollins v. Massanari*, 261 F.3d 853, 856-857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2).

//

//

a. <u>Neck-Related Evidence</u>

Plaintiff injured her neck while riding horses on the alleged onset date, which resulted in radiation of symptoms into her arms. Tr. 1048. In 2014, while Plaintiff continued to allege bilateral upper extremity symptoms following her surgery, the ALJ found examinations were consistently normal, including strength, sensation, and range of motion testing. Tr. 1048 (citing Tr. 377, 391, 403, 411, 414). In 2015, while Plaintiff went to the ER for neck pain, the ALJ found imaging showed no change, previous decompression maintained reasonable structural integrity, there was no new surgical indication, and examination showed full strength in the upper extremities. Tr. 1048 (citing Tr. 660, 662, 673-74, 849). In 2016, while Plaintiff renewed neck complaints including radiation of pain into bilateral upper extremities, the ALJ found that there was no evidence of ulnar neuropathy at the elbows, cervical radiculopathy, or generalized peripheral polyneuropathy affecting the upper extremities. Tr. 1048 (citing Tr. 665). Plaintiff requested further surgery but the neurologist and surgeon found imaging unremarkable and found examinations did not warrant surgical intervention. *Id.* While Plaintiff alleged she dropped items, could not use her arms for more than one hour, and could not lift more than five pounds for five minutes, the ALJ found her motor testing, sensation, and range of motion tests were consistently normal and EMG studies in both 2014 and 2016 were normal. Tr. 1048-49 (citing Tr. 377,

1  391, 403, 411, 414, 589, 665, 673, 679, 684, 866).  The ALJ reasonably concluded

2  that the neck-related evidence was inconsistent with Plaintiff's allegations of

3  completely disabling health conditions.  This finding is supported by substantial

4  evidence.

5       b.  Cardiac Evidence

6       The ALJ acknowledged that the record demonstrates cardiac difficulties, but

7  that they occurred during discrete periods and that Plaintiff's cardiac condition has

8  been stable for the bulk of the record.  Tr. 1049-50.  The ALJ cited extensive

9  examples of Plaintiff's cardiac condition that is inconsistent with the totally

10 debilitating symptoms alleged.  Plaintiff had a remote history of complications,

11 which led to cardiac catheterization and ablation in 2007, 2008, and 2010.  *Id.*

12 (citing Tr. 413).  Plaintiff received a pacemaker in 2015 following symptoms of

13 chest pain, and showed significant improvement in chest pain with using one to

14 two tablets of daily nitroglycerin.  *Id.* (citing Tr. 606).  In June 2016, Plaintiff's

15 pacemaker showed episodes of arrhythmias but no evidence of syncope.  *Id.* (citing

16 Tr. 1447-1454).  Plaintiff repeatedly denied cardiac symptoms during visit.  *Id.*

17 (citing Tr. 1455, 1472, 1557, 1576, 1580, 1643, 1899).  In March 2019, Plaintiff

18 specifically denied palpitations or presyncope symptoms and her exam showed

19 normal heart rate and rhythm.  *Id.* (citing Tr. 1589).  In June 2019, an

20 echocardiogram showed normal LV and no significant valvular disease, a

1    myocardial perfusion study was largely unremarkable and no arrhythmias were

2    seen, and a stress test was interpreted as low risk.  Tr. 1050 (citing Tr. 786, 790,

3    1595, 1734, 2073).  In November 2019, Plaintiff reported chest pain and requested

4    heart catheterization, which showed normal coronary arteries, LV and end diastolic

5    pressure.  Tr. 1050 (citing Tr. 796, 1580).  Plaintiff later admitted she had a

6    "mental breakdown during her admit" and that she no longer had any cardiac

7    symptoms.  *Id.* (citing Tr. 1622).  In January and December 2020, Plaintiff denied

8    cardiac symptoms, had a normal cardio exam, and was noted to be doing well from

9    a cardiac standpoint.  *Id.* (citing Tr. 2069, 2074, 2094).

10        The ALJ reasonably concluded that the cardiac evidence was inconsistent

11    with Plaintiff's allegations of completely disabling health conditions.  This finding

12    is supported by substantial evidence.  It is the ALJ's responsibility to resolve

13    conflicts in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

14    Cir. 1995).  Plaintiff's citations do not overturn the ALJ's rational interpretation of

15    the remaining evidence in the record.  *Burch*, 400 F.3d at 679 ("Where evidence is

16    susceptible to more than one rational interpretation, it is the ALJ's conclusion that

17    must be upheld.").  Moreover, while a different interpretation could be made as to

18    whether some objective medical evidence conflicted with Plaintiff's reported level

19    of debilitating symptoms, the ALJ articulated several other supported grounds for

20    discounting Plaintiff's reported symptoms.  *See Carmickle v. Commissioner*, 533

F.3d 1155, 1163 (9th Cir. 2008); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (upholding the ALJ where "the ALJ here considered other factors and found additional reasons for discrediting Plaintiff's subjective symptom testimony.").

### 4.  Daily Activities

The ALJ found that Plaintiff's alleged symptoms were inconsistent with her daily activities.  Tr. 1050.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13 (internal citation and quotation marks omitted).

Here, the ALJ found activities undermined her allegations of disabling physical limitations.  Tr. 1050.  While Plaintiff alleged arm and grip weakness, the ALJ noted Plaintiff gardened her two acre yard but alleged difficulty with arm weakness and grip.  *Id.* (citing Tr. 459).  While Plaintiff alleged she had to elevate

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

her legs six hours per day and tried to stay off her feet, Plaintiff took her dog on

two-mile walks. *Id.* (citing Tr. 606). The ALJ also listed more recent records

detailing significant activities such as physical labor, milking cows, plans to

purchase a new horse, and visiting Montana. *Id.* (citing Tr. 1488-1489, 1493,

1503, 1570, 1630).

Plaintiff asserts the ALJ relied on "atypical data points." ECF No. 14 at 15.

It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*

*v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Plaintiff's citations do not overturn

the ALJ's rational interpretation of the evidence in the record. *Burch*, 400 F.3d at

679 ("Where evidence is susceptible to more than one rational interpretation, it is

the ALJ's conclusion that must be upheld."). The ALJ reasonably concluded that

these activities contradicted Plaintiff's claims of debilitating impairments. This

finding is supported by substantial evidence.

*5. Exaggeration*

The tendency to exaggerate provides a permissible reason to discount

Plaintiff's symptoms testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th

Cir. 2001). First, the ALJ found that Plaintiff reported a multiple sclerosis

diagnosis to providers despite two neurology opinions excluding the diagnosis. Tr.

1051 (citing Tr. 623). Second, the ALJ found that while she reported to her

therapist in 2016 that a "massive heart attack" limited her, it had occurred years

1   prior and cardiac records at this time indicate Plaintiff felt as good as she had 25

2   years earlier.  Tr. 1051.  Third, one provider found variability in her strength

3   testing and another consultative mental evaluator labeled Plaintiff as "histrionic."

4   Tr. 1051 (citing Tr. 569-580).  This finding is supported by substantial evidence.

5   　　　The ALJ's finding that Plaintiff's subjective symptom testimony conflicted

6   with the evidence in a multitude of ways was clear, convincing, and properly

7   supported by substantial evidence.

8   **C.  Medical Evidence**

9   　　　Plaintiff challenges the ALJ's evaluation of the opinions of Dr. Atteberry,

10   M.D., Dr. Krishnamurthi, M.D., Dr. Toliver, D.O., Dr. Palasi, M.D., Dr. Canaday,

11   M.D., Dr. Becerril, M.D., and Dr. Thompson, M.D.  ECF No. 14 at 17-25.

12   　　　There are three types of physicians: "(1) those who treat the claimant

13   (treating physicians); (2) those who examine but do not treat the claimant

14   (examining physicians); and (3) those who neither examine nor treat the claimant

15   [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

16   *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

17   Generally, the opinion of a treating physician carries more weight than the opinion

18   of an examining physician, and the opinion of an examining physician carries more

19   weight than the opinion of a reviewing physician.  *Id.*  In addition, the

20   Commissioner's regulations give more weight to opinions that are explained than

to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id*.

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Atteberry, M.D.

The ALJ did not address a record from Dr. Atteberry. *See* Tr. 1052-55. Dr. Atteberry performed a back surgery on Plaintiff in December 2020, after which he discharged Plaintiff with instructions of "no strenuous activity or lifting greater than 10 pounds" and to "follow-up with [Dr. Atteberry] in 4 weeks." Tr. 2053.

The ALJ need not discuss all evidence, just "significant probative evidence that has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal citation omitted).

There is nothing in the discharge summary to indicate that the recovery restriction was nothing more than temporary (check-up in 4 weeks).  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Thus, this discharge summary appears neither significant nor probative.  The ALJ did not err.

*2. Dr. Krishnamurthi, M.D.*

The ALJ gave significant weight to non-examining doctor Dr. Krishnamurthi.  Tr. 1053-54.  Dr. Krishnamurthi found Plaintiff's impairments are cervical degenerative disk disease and cardiac problems including Wolfe-Parkinson-White condition, noting Plaintiff had a pacemaker and ablation.  *Id.*  Dr. Krishnamurthi opined Plaintiff's cardiac condition was stable and that the condition does not meet or equal a listing.  *Id.*  Dr. Krishnamurthi found Plaintiff would still have some restrictions due to her cervical spine problems.  Tr. 1054.  The ALJ found Dr. Krishnamurthi was able to review the entire record with medical expertise and a familiarity with Social Security regulations, and that the opinion was consistent with the longitudinal medical history, objective medical findings, and other treating and examining opinions in the record.  *Id.*

1    Plaintiff asserts the ALJ harmfully erred by not addressing Dr.

2  Krishnamurthi's agreement with Dr. Becerril's opinion. ECF No. 14 at 18-19. Dr.

3  Krishnamurthi agreed Dr. Becerril's opinion was supported by medical evidence to

4  the extent that Plaintiff has a history of chronic medical problems, but based upon

5  Dr. Krishnamurthi's review of the record, Plaintiff would not be absent from work.

6  Tr. 1123-24. Thus, the opinion was not "internally inconsistent" to warrant

7  rejection. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ's

8  assessment of this opinion is supported by substantial evidence.

9    *3. Dr. Toliver, D.O.*

10    The ALJ gave some weight to Dr. Toliver's January 2016 letter regarding

11  Plaintiff's physical impairments. Tr. 1052. Dr. Toliver was a treating provider

12  who opined Plaintiff's physical impairments prevented Plaintiff from doing jobs

13  that she previously performed. *Id.* The ALJ found this consistent with the finding

14  that Plaintiff was unable to perform past relevant work but found that it was not

15  indicative of a complete inability to perform any work. *Id.* However, the ALJ

16  gave little weight to Dr. Toliver's December 2016 form. Tr. 1052. Dr. Toliver

17  opined (1) Plaintiff could performed sedentary exertion no more than part time

18  based on her complaints of pain in her neck and extremities, numbness in

19  extremities, chest pain, palpitations, and dizziness, (2) Plaintiff's fatigue and pain

20  require her to lie down at least two hours during a workday, and (3) Plaintiff would

miss four or more days of work per month because full time work would be physically overtaxing. Tr. 1052 (citing Tr. 648-50).

Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Moreover, an opinion may be rejected or given less weight if it is based on Plaintiff's properly discounted subjective complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ found the notes rely on little more than Plaintiff's own subjective complaints with no reference to any objective testing and as a result, the ALJ found the opinion inconsistent with the longitudinal record, including the stability of Plaintiff's cardiac symptoms, the lack of objective evidence corroborating her severity of symptoms, and lack of substantiation of allegations of dizziness. Tr. 1052. These are specific and legitimate reasons to discount the opinion, which are supported by substantial evidence.

### 4. Dr. Palasi, M.D.

The ALJ gave little weight to the August 2016 opinion of Dr. Palasi. Tr. 1053. Dr. Palasi opined Plaintiff was unable to sustain sedentary exertion based on chronic arrhythmia and a permanent pacemaker. Tr. 778. The ALJ found this opinion inconsistent with the cardiology notes from Dr. Canaday indicating cardiac

stability, inconsistent with Plaintiff's denial of cardiac symptoms, and the opinion

provided no explanation regarding how a permanent pacemaker would cause any

limitation in and of itself.  Tr. 1053.  A medical opinion may be rejected by the

ALJ if it is conclusory or inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*

*v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  These are a specific and legitimate

reasons to assign the opinion little weight, which are supported by substantial

evidence.

### 5.  *Dr. Canaday, M.D.*

The ALJ gave minimal weight to Dr. Canaday's November 2016 letter

regarding Plaintiff's cardiac condition.  Tr. 1052.  Dr. Canaday opined Plaintiff

"should be on disability" due to her cardiac history and additional health problems.

Tr. 1052.  The ALJ found this opinion not only was of little probative value as it

expressed an opinion reserved to the Commissioner, but also vague.  Tr. 1052-53.

Because Plaintiff's cardiac functioning was "fairly benign" during the period at

issue, the ALJ presumed Dr. Canaday's reference to Plaintiff's "cardiac history"

likely encompassed issues prior to May 2014.  The ALJ found Dr. Canaday did not

specify any impairment that presented ongoing difficulties.  Tr. 1053.  In contrast,

the ALJ noted that treatment notes show normal cardiac exams and Plaintiff's

denial of cardiac symptoms.  *Id.* (citing Tr. 796, 1445, 1447, 1472, 1557, 1576,

1580, 1606, 1643, 1899).  A medical opinion may be rejected by the ALJ if it is

1    conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d

2    at 957. Plaintiff challenges the ALJ's determination that her cardiac history was

3    "benign" in contrast to this opinion. ECF No. 14 at 23. Where evidence is subject

4    to more than one rational interpretation, the ALJ's conclusion will be upheld.

5    *Burch*, 400 F.3d at 679. This is a specific and legitimate reason to discount this

6    opinion, which is supported by substantial evidence.

7         The ALJ gave largely significant weight to Dr. Canaday's March 2017 letter.

8    Tr. 1053. Dr. Canaday found Plaintiff's cardiac status was stable and that it "no

9    longer represents any limitations." Tr. 655. The ALJ found this consistent with

10   the longitudinal record. Tr. 1053. However, the ALJ found less persuasive Dr.

11   Canaday's finding that Plaintiff "may" need to rest and elevate her legs based on

12   lower extremity edema and pain based on Plaintiff's self-diagnosis of a previous

13   stroke and/or multiple sclerosis. *Id.* As noted *supra*, the ALJ found there was no

14   evidence of an ongoing edema, multiple sclerosis had been ruled out by two

15   neurologists, and the record does not establish Plaintiff suffered a cerebral vascular

16   accident. *Id.* Plaintiff challenges this finding because she had a 1+ non-pitting

17   edema in 2019. ECF No. 14 at 24. Where evidence is subject to more than one

18   rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at

19   679. This is a specific and legitimate reason to give the opinion less weight, which

20   is supported by substantial evidence.

6. *Dr. Becerril, M.D.*

The ALJ gave Dr. Becerril's April 2020 opinion little weight.  Tr. 1054-55.
Dr. Becerril opined Plaintiff would miss 16 days of work per month, Plaintiff is
unable to meet the demands of fulltime sedentary work, and Plaintiff is physically
unable to travel by bus or subway because there is no such service where she lives.
*Id.* (citing Tr. 1398-1400).  A medical opinion may be rejected by the ALJ if it is
conclusory or inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d
at 957.  The ALJ found Dr. Becerril was not the treating provider on Plaintiff's
primary impairments but was willing to speculate on conditions dating back to
before he treated Plaintiff (stated limitations have applied since 2014) and that he
relied on reasons other than Plaintiff's impairments in assessing limitations (cannot
travel due to rural area).  *Id.*  These are specific and legitimate reasons to give the
opinion less weight, which is supported by substantial evidence.

7. *Dr. Thompson, M.D.*

The ALJ gave Dr. Thompson's March 2015 opinion great weight.  Tr. 1053.
Dr. Thompson opined Plaintiff was limited following cervical surgery, but that
Plaintiff would be capable of a light RFC after recovering from surgery.  Tr. 765-
66.  Plaintiff asserts the ALJ harmfully erred because Dr. Thompson did not make
a "definitive finding" of her RFC capabilities post-surgery.  ECF No. 14 at 25.
Plaintiff provides no evidence that the ALJ could not rely on this opinion absent a

1    "definitive finding."  The ALJ found this opinion supported by the medical

2    evidence and Plaintiff's daily activities, as discussed *supra*.  Tr. 1053.  The ALJ's

3    assessment of this opinion is supported by substantial evidence.

4         In sum, the ALJ did not harmfully err in assessing each of the medical

5    opinions.

6    **D.  Residual Functional Capacity**

7         Plaintiff challenges the ALJ's RFC formulation that limited Plaintiff to

8    "occasional interaction with supervisors (although additional time for training is

9    acceptable)."  ECF No. 15 at 4 (citing Tr. 1046).

10        An RFC is an assessment regarding the most a claimant is capable of despite

11   their limitations.  20 C.F.R. §§ 404.1545, 416.945.  Certain jobs include specific

12   vocational preparation ("SVP") which is "the amount of lapsed time required by a

13   typical worker to learn the techniques, acquire the information, and develop the

14   facility needed for average performance in a specific job-worker situation."  DOT,

15   App. C., 1991 WL 688702 (4th ed. 1991).  An SVP 2 means "[a]nything beyond

16   short demonstration up to and including 1 month."  *Id.*

17        The ALJ found that Plaintiff could tolerate more than occasional interaction

18   with supervisors for a short period, which fit SVP 2 positions that requires training

19   for jobs that take no longer than one month.  Tr. 1046.  On a long term basis,

20   however, the ALJ found Plaintiff could not handle more than occasional

interaction with supervisors.  *Id.*  Plaintiff argues that a finding of occasional

supervisor training contact would compel disability and that the ALJ did not

provide any explanation for more than occasional supervisor contact for training.

ECF No. 14 at 5.  Plaintiff cites to the Commissioner's Program Operations

Manual ("POMS") for the proposition that "occasional" is a vocation terms that

means the condition exists up to 1/3 of the day.  ECF No. 14 at 4-5 (citing POMS

DI 25001.001).  However, POMS is an agency interpretation that does not impose

judicially enforceable duties on the ALJ nor the Court.  *Lockwood v. Comm'r Soc.

Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010).  That Plaintiff can have more

than occasional interaction with a supervisor for training purposes (occurring for

no more than one month) but not for longer periods of time following training does

not present an apparent conflict between the VE's testimony and the DOT that the

ALJ was required to reconcile.  *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir.

2015).  The ALJ found Plaintiff had a moderate limitation in interacting with

others, and gave some weight to expert testimony that Plaintiff was capable of

superficial contact with supervisors in the workplace away from the public.  Tr.

1045 (citing Tr. 268-275), 1054 (citing Tr. 90-103, 105-120).  The ALJ's finding is

supported by substantial evidence.

//

//

**E.  Step Five**

Plaintiff challenged the ALJ's assessment of Plaintiff's age category at step five.  ECF No. 14 at 5.

At step five of the sequential evaluation process, an ALJ must consider a claimant's age as an increasingly limiting vocational factor.  20 C.F.R. §§ 404.1563(b), 416.963(a).  An ALJ "will not apply the age categories mechanically in a borderline situation" where the claimant "is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled."  *Id.*  In such a case, the ALJ is "not required to use an older age category" but is required only to consider whether to use an older age category.  *Lockwood*, 616 F.3d at 1070-71.  An ALJ properly considers the older age category by (1) mentioning the claimant's date of birth and age, (2) citing the appropriate regulations to indicate the ALJ knew of the prohibition against mechanically applying age categories in a borderline situation, and (3) evaluating the overall impact of the factors in the claimant's case after relying on VE testimony.  *Id.* at 1071-72.

Plaintiff argues that this is a borderline age situation where Plaintiff was less than two months away from turning 55 when the ALJ issued the denial in April 2021.  ECF No. 14 at 5.  First, the ALJ found that Plaintiff was 48 years old at the time of disability onset, noting that she was in the younger individual age (18-49)

category and subsequently changed age categories to closely approaching advance age. Tr. 1056. Second, the ALJ cited to the applicable regulations which demonstrates awareness of not mechanically applying the categories in a borderline situation. *Id.* (citing 20 C.F.R. §§ 404.1563, 416.963). Third, the ALJ considered the overall impact of all the factor's in Plaintiff's case when relying on the VE testimony before finding Plaintiff not disabled. *Id.* at 1056-57. The Court finds the *Lockwood* factors are met and the ALJ accordingly did not err.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 15) is

    **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED April 11, 2022.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 33